IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND – NOTHERN DIVISION

| | |
|---|---|
| **JORDAN KERR** <br> 6 Oakwood Dr <br> North Haven, CT 06473 <br><br> **Plaintiff** <br><br> vs. <br><br> **CRAB SPORTS INC.** <br> d/b/a CRAB SPORTS <br> 900 East Fayette Street, Unit 2393 <br> Baltimore, MD 21203 <br><br> **Defendant.** | * <br> * <br> * **Civil Action No:** <br> * <br> * <br> * <br> * <br> * <br> * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Jordan Kerr, by and through undersigned counsel Harris S. Ammerman, brings forth the following causes of action against Defendant Crab Sports Inc. doing business as Crab Sports (hereinafter "Crab") and for grounds alleges as follows:

### PARTIES

1. Plaintiff Jordan Kerr is an adult domiciled in North Haven, Connecticut.

2. Defendant Crab Sports Inc. is a Maryland corporation, licensed as an online sportsbook, with its headquarters and primary place of business at 900 East Fayette Street, Unit 2393, Baltimore, MD 21203.

1

3. Defendant's acts and omissions as set forth below were undertaken with actual malice, evil and rancorous motive, and for the purpose of harming Kerr arbitrarily such that it shocks the conscience.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over Crab because it is domiciled and maintains its principal place of business in Maryland.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is domiciled in Maryland and a substantial part of the events giving rise to this action occurred in Maryland.

## FACTS COMMON TO ALL COUNTS

7. On January 10, 2024, Plaintiff deposited $3,500 into his Crab Sports online gaming account.

8. After placing wagers and winning many of them, Plaintiff's account balance reached $12,476.

9. On or about February 1, 2024, Plaintiff requested a withdrawal of the entire $12,476.

10. Crab refused, freezing the funds.

11. On March 13, 2024, Crab disbursed only $3,500 back to Plaintiff, and informed him it was seizing the remaining $8,976.

12. Crab has refused to return Plaintiff's money.

13. As a result, Plaintiff has suffered pecuniary loss, consequential damages, mental anguish, outrage, mortification, emotional distress, anxiety, loss of sleep, and hedonic injury.

## CAUSES OF ACTION

## COUNT I: CONVERSION

14. Plaintiff repeats and realleges all preceding paragraphs as if set forth fully herein.
Plaintiff owned and had the immediate right to possess the funds held in his Crab Sports account, including the specific, identifiable sum of $8,976 remaining after Crab disbursed $3,500.

15. Defendant intentionally exercised dominion and control over Plaintiff's funds by freezing the account upon Plaintiff's February 1, 2024 withdrawal request and thereafter seizing and withholding $8,976.

16. Defendant's exercise of dominion and control was unauthorized and inconsistent with Plaintiff's rights of ownership and immediate possession.

17. Plaintiff demanded release of his funds, and Defendant refused.

18. As a direct and proximate result, Plaintiff suffered immediate, ascertainable pecuniary loss of $8,976, plus consequential and non-economic damages.

3

19. Defendant's conduct was undertaken with actual malice, evil and rancorous motive, and intent to harm Plaintiff arbitrarily, predicating an award of punitive damages.

## COUNT II: BREACH OF CONTRACT

20. Plaintiff repeats and realleges all preceding paragraphs.

21. Plaintiff and Defendant entered into a valid and enforceable written contract governing deposits, wagers, account balances, and withdrawals.

22. Plaintiff fully performed his contractual obligations by depositing $3,500 on January 10, 2024, placing lawful wagers, and maintaining his account in good standing; his balance reached $12,476.

23. Defendant breached the agreement by refusing to honor Plaintiff's February 1, 2024 withdrawal request and by seizing and withholding $8,976 of Plaintiff's balance.

24. Defendant's breach directly and proximately caused Plaintiff to suffer damages including, at minimum, $8,976 and additional consequential losses.

## COUNT III: QUASI CONTRACT

25. Plaintiff repeats and realleges all preceding paragraphs.

26. Plaintiff conferred a benefit on Defendant by depositing funds and generating winnings that increased the balance in his account.

27. Defendant had knowledge of and appreciated the benefit by accepting the deposit and wagers, crediting Plaintiff's balance, returning only $3,500, and retaining $8,976.

4

28. Defendant's retention of the benefit, without paying legitimately owed funds, is inequitable and unjust.

29. Plaintiff is entitled to restitution and disgorgement equal to the benefit unjustly retained, including $8,976, together with consequential damages.

## COUNT IV: IMPLIED IN FACT CONTRACT

30. Plaintiff repeats and realleges all preceding paragraphs.

31. The parties' conduct created an implied-in-fact contract: Defendant accepted Plaintiff's deposit, accepted wagers, maintained an account balance, and provided a withdrawal mechanism, thereby implying a promise to pay legitimate balances upon request.

32. Plaintiff provided consideration by depositing funds and wagering; Defendant received consideration and undertook a corresponding obligation to pay legitimate balances.

33. Defendant breached the implied agreement by freezing the account upon Plaintiff's withdrawal request and seizing and withholding $8,976.

34. Plaintiff suffered pecuniary and consequential damages as a direct and proximate result of Defendant's breach.

## COUNT V: DETINUE

35. Plaintiff repeats and realleges all preceding paragraphs.

36. Plaintiff owns and is immediately entitled to possession of the specific, identifiable sum of $8,976 held by Defendant.

37. Defendant wrongfully detains that property by refusing to release it following Plaintiff's withdrawal request and subsequent demands.

38. The value of the property is $8,976, plus the time-value of money and consequential losses.

39. Plaintiff is entitled to judgment for the return or value of the specific property and for damages caused by its detention.

## COUNT VI: FRAUD

40. Plaintiff repeats and realleges all preceding paragraphs.

41. On and before February 1, 2024, through its platform interfaces, account statements, and customer communications, Defendant represented that deposited funds and legitimate winnings would be available for withdrawal upon request consistent with the terms under which wagers were accepted.

42. These representations were false or misleading because Defendant froze Plaintiff's funds upon his withdrawal request and later seized $8,976, and/or omitted material conditions or criteria that Defendant would invoke to refuse payout.

43. At the time the representations were made and Plaintiff's deposit and wagers were accepted, Defendant knew the representations were false, or made them recklessly without caring whether they were true, and intended to induce Plaintiff to deposit and wager funds.

44. Plaintiff justifiably relied on Defendant's representations and course of dealing by depositing $3,500, wagering, and accruing a $12,476 balance in reasonable expectation that legitimate balances would be paid.

45. As a direct and proximate result, Plaintiff suffered pecuniary loss of $8,976, together with consequential and non-economic damages.

46. Defendant acted with actual malice and evil motive, entitling Plaintiff to punitive damages.

## COUNT VII: MARYLAND CONSUMER PROTECTION ACT

47. Plaintiff repeats and realleges all preceding paragraphs.

48. Plaintiff is a consumer who purchased/used Defendant's online sports wagering services primarily for personal purposes.

49. Defendant engaged in unfair or deceptive trade practices by: (a) advertising and offering sports wagering services while leading consumers, including Plaintiff, to reasonably expect that legitimate balances would be paid upon request; (b) accepting Plaintiff's deposit and wagers and posting his account balance; and then (c) freezing and seizing $8,976 after a legitimate withdrawal request—conduct that had a tendency to mislead and that violated reasonable consumer expectations.

50. Defendant's unfair or deceptive practices directly and proximately caused Plaintiff actual damages, including the loss of $8,976 and consequential harm.

51. Pursuant to Md. Code, Com. Law § 13-408, Plaintiff seeks actual damages, reasonable attorneys' fees, and costs.

52. Defendant's conduct was willful and knowing, further supporting an award of attorneys' fees and full compensation for Plaintiff's losses.

## **RELIEF SOUGHT**

53. Wherefore Plaintiff demands a jury trial on all counts and upon a verdict in his favor, asks that economic and non-economic compensatory damages of $150,000 be assessed against the Defendant, as well as punitive damages of $150,000 and that Plaintiff be awarded costs, attorneys' fees, as well as restitutionary damages and disgorgement and all other relief to which he is entitled under Maryland state law. Plaintiff also seeks leave of Court to freely amend this complaint in due course and to add co-Defendants upon proper cause and justification.

                                                   Respectfully submitted,

Dated: August 30, 2025

/s/ Harris S Ammerman
Harris S. Ammerman, Esq.
1115 Massachusetts Ave
Washington, DC 20005
(301) 655-0606
hsaaba@aol.com
*Counsel for Jordan Kerr*